UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x

CHARLES B. MCLAURIN

        Plaintiff,

   -against-                              03 Civ. 10037 (CM)

NEW ROCHELLE POLICE OFFICERS; P. KORNAS;
L. FALCONE; B. FAGAN; DET. D. LORNEGAN;
LYNCH; LORE; FATTAH; MARTINEZ; KAMAU; CONCA;
NAVARETTE; O. MORETTI; THE CITY OF NEW
ROCHELLE; DOMINIC PROCOPIO; PATRICIA ANDERSON;
TIMOTHY IDONI; MAYOR CITY OF NEW ROCHELLE;
THE COUNTY OF WESTCHESTER; L. SPANO,
WESTCHESTER COUNTY CLERK,

        Defendants.
----------------------------------------------------------------------------x

DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND GIVING PLAINTIFF NOTICE
PURSUANT TO RULE 56 OF THE CONVERSION OF OFFICER MORETTI'S
MOTION TO A MOTION FOR SUMMARY JUDGMENT

McMahon, J:

      Pro se plaintiff, Charles B. McLaurin, brings an action pursuant to 42 U.S.C. § 1983

alleging that the defendants, Police Officer Peter Kornas ("Kornas"), Police Officer Louis

Falcone ("Falcone"), Police Officer Brian Fagan ("Fagan"), Detective David Lornegan

("Lornegan"), Police Officer John Lynch ("Lynch"), Police Officer Frank Lore ("Lore"), Police

Officer Askaree Al-Fattaah ("Al-Fattaah"), Police Officer Edward Martinez ("Martinez"), Police

Officer Sekou Len Kamau ("Kamau"), Police Officer Daniel Conca ("Conca"), Police Officer

Adrian Navarette ("Navarette"), and Police Officer Dina Lynn Moretti ("Morretti") (collectively,

"Officer Defendants"), and Dominic Procopio ("Procopio"), Mayor Timothy Idoni ("Idoni") and

the City of New Rochelle, ("City Defendants") violated his federally protected rights. Plaintiff's complaint is based upon two separate incidents: (1) Plaintiff's arrest on August 6, 2001 on charges of assault; and (2) Plaintiff's arrest on September 28, 2002, on charges of criminal contempt for violation of an order of protection. The plaintiff seeks recovery of an unspecified amount of monetary damages.

For the reasons stated herein, the motion is granted as to Officer Defendants Kornas, Falcone, Fagan, Lornegan, Lynch, Lore, Al-Fattaah, Martinez, Kamau, Conca, Navarette, and City Defendants Procopio, Idoni, and the City of New Rochelle. As to Officer Morretti, the motion to dismiss is converted to a motion for summary judgment and plaintiff has 45 days to submit admissible evidence that raises a genuine issue of material fact on the issue of probable cause.

**Background**

The following allegations from the complaint are presumed true for purposes of this motion. On August 6, 2001, after plaintiff's shift at the New Rochelle Public Library (where he worked as a clerk), an ex-girlfriend of his, Annette DeQuatro, came to his apartment. When she arrived, at approximately 9:00 pm, DeQuatro began yelling at plaintiff about a woman named Vivian that she thought he was seeing. An argument ensued between DeQuatro and plaintiff, and he asked her to cook dinner or leave. (Am. Cplt. at 1.) Plaintiff alleges that DeQuatro refused to leave and became physically violent. However, Plaintiff did not want to call the police because he was on parole and would have to report any police contact. (Am. Cplt. at 1.) Plaintiff was also the subject of an order of protection, which was ordered by the court on August 7. The complaint omits any mention of the order of protection.

Plaintiff states that when he walked toward DeQuatro she attempted to kick him in the groin. Plaintiff alleges that "[he] instinctively turned so that her kick missed the mark simultaneously smacking her with [his] right hand." (Am. Cplt. at 1.) DeQuatro then called the New Rochelle Police Department. (Am. Cplt. at 1.)

Approximately forty minutes after the call was placed, two New Rochelle police officers, Officers Kornas and Falcone, arrived at the plaintiff's apartment. Plaintiff told the police that the person who had called them, "was behind the doorway and they could talk with her in the hallway." (Am. Cplt. at 2.) Although denied permission to enter, the police did enter plaintiff's home and searched the premises.

When Plaintiff refused to extinguish his cigarette at Officer Kornas' order, plaintiff states that a struggle ensued between him, Kornas, and Falcone. (Am. Cplt. at 2.) Plaintiff alleges that the police officers hit him "in the back of [his] head, neck shoulders and back as hard as [they] could with a metal nightstick." (Am. Cplt. at 2.) Plaintiff asserts that, when struggling with the officers, Kornas slipped on a pile of magazines and fell, dragging Plaintiff down with him. Plaintiff was able to grab Officer Falcone's nightstick and disarm him. This caused the police officers to radio for backup.

When the backup officers arrived (Defendants Lornegan and Fagan, and four other unnamed officers), they told Plaintiff to lie on his stomach. Plaintiff states that he complied. Plaintiff claims that the unnamed officers "stood on [his] extremities ([his] ankles and [his] shoulders) while Detective David Lornegan put his knee on the small of [plaintiff's] back, cuffed [his] left wrist and then proceeded to pull [his] wrist to the back of [his] head causing [plaintiff] to scream out in pain." (Am. Cplt. at 3.) Plaintiff states that Lornegan pulled the handcuff so

hard that it cut through his flesh to the bone. Additionally, Plaintiff states that, while Lornegan pulled his head back, Officer Brian Fagan sprayed a full can of mace into his face. Plaintiff alleges that he then endured a few kicks to the ribs before the handcuff was placed on his other wrist. (Am. Cplt. at 3). Plaintiff was subsequently placed under arrest and taken to the hospital.

Plaintiff was indicted on three counts of assault in the second degree; two counts of criminal possession of a weapon in the third degree; one count of assault in the third degree; one count of resisting arrest; and one count of obstructing governmental administration in the second degree. (Indictment No. 01-1057.) A jury found the plaintiff guilty of one count of assault in the third degree.

Plaintiff alleges that after his August 6 arrest, pursuant to an alleged policy of New Rochelle's police to abuse men of color who date white women, he was targeted by both the New Rochelle Police Department and the City of New Rochelle. (Am. Cplt. at 3.) He alleges the two groups sought to "destroy [him] economically," by causing (1) the seizure of his motorcycle from a New Rochelle municipal lot, and its subsequent sale without notice to him, (2) the loss of his job as a clerk at the New Rochelle Public Library. (Am. Cplt. at 4.)

Plaintiff also alleges that he was subjected to a second arrest, on "spurious charges," resulting from his sending e-mails to Ms. DeQuatro. (Am. Cplt. at 5.) The Answer makes clear that the charge was violation of the order of protection (Am. Ans. ¶ 65) and the date of the arrest was September 28, 2002 (Am. Ans. Third Aff. Defense, at 20). The charges resulting from this arrest were dismissed on March 10, 2004, for failure to prosecute.

Plaintiff seeks an unspecified amount in damages against the City and Officer Defendants for false arrest; abuse of process and malicious prosecution. (Am. Cplt. at 9.) Additionally, Plaintiff wants his job back, compensation for his motorcycle, compensation for physical and emotional pain, and punitive damages from these Defendants.

The Officer and City Defendants, having answered, moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The Defendants argue that (1) the police officer defendants are protected by qualified immunity; (2) Plaintiff's claims against Dominic Procopio and Mayor Timothy Idoni must be dismissed for failure to state a claim; (3) Plaintiff fails to state any claim against the City of New Rochelle; and (4) all claims brought under state law must be dismissed for failure to comply with the relevant provisions of New York General Municipal Law.[1]

**Standard of Review**

The standard of review on a motion for judgment on the pleadings under Rule 12(c) is whether "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Serv., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995). This standard is the same as that applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Lab., 850 F.2d 904, 909 n. 2 (2d Cir. 1988). A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only "when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Phillip v. University of Rochester, 316 F.3d 291, 293 (2d

---

[1] Defendants Spano and Anderson filed separate motions to dismiss, which this court granted on March 9, 2005. The County of Westchester's motion to dismiss the claim against it was also dismissed in a May 5, 2005 decision of this Court.

Cir. 2003) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957));

<u>Kaltman-Glasel v. Dooley</u>, 156 F. Supp. 2d 225, 226 (D.Conn. 2001).

The function of the Court is not to weigh the evidence that may be presented at trial.

Instead, the Court must determine if the claims are legally sufficient. <u>Goldman v. Belden</u>, 754

F.2d 1059, 1067 (2d Cir. 1985); <u>see also</u> <u>King v. Simpson</u>, 189 F.3d 284, 287 (2d Cir. 1999),

drawing all reasonable inferences in favor of the plaintiff and accepting the allegations of the

complaint as true. <u>See</u> <u>Desiderio v. National Ass'n of Sec. Dealers, Inc.</u>, 191 F.3d 198, 202 (2d

Cir. 1999). Therefore, a court should grant the motion only if the plaintiffs can prove no set of

facts in support of their claims that would entitle them to relief. <u>See</u> <u>Swierkiewicz v. Sorema,</u>

<u>N.A.</u>, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L. Ed. 2d 1 (2002); <u>King v. Simpson</u>, 189 F.3d 284,

286 (2d Cir. 1999).  The issue is not whether the plaintiff will ultimately prevail but whether the

plaintiff is entitled to offer evidence to support the claims. <u>Villager Pond, Inc. v. Town of</u>

<u>Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995).

The Court is not permitted to consider material outside the pleadings on such a motion.

<u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Leonard F. v. Israel Discount Bank</u>

<u>of New York</u>, 199 F.3d 99, 106 (2d Cir. 1999).

**Discussion**

**I.      Qualified Immunity Of Officer Defendants**

Qualified immunity shields a public official from civil liability when his conduct does not

violate a clearly established statutory or constitutional right.  Whether an official is entitled to

qualified immunity requires a two-part analysis. The threshold question is whether, "Taken in

the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's

conduct violated a constitutional right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001). Qualified immunity motions are decided by assuming the plaintiff's version of the facts to be true, not by allowing defendants to testify as to their version of what happened. <u>Stephenson v. Doe</u>, 332 F.3d 68 (2d Cir. 2003). If the Court determines that the officer's conduct did not violate a constitutional right, the analysis ends. <u>Saucier</u>, 533 U.S. at 201. If the conduct does infringe on a constitutional right, the Court must determine "whether the right was clearly established" at the time it was allegedly infringed. <u>Id.</u>

Plaintiff alleges that excessive force was used to effect his arrest on August 2001 arrest. He also alleges false arrest and malicious prosecution with respect to the September 2002 arrest.

An individual's right to be shielded from the use of excessive force, and not to be arrested falsely or prosecuted maliciously, are well settled constitutional rights that were clearly established at the time of the incidents in question. Defendants do not argue otherwise.

**A. August 6, 2001 Arrest**

In connection with his August 6, 2001 arrest, plaintiff claims that defendants Falcone, Fagan, Lornegan, Kornas, and Martinez, as well as the four unnamed officer defendants, used excessive force. In his amended complaint, plaintiff does name (in the caption) seven additional police officers as defendants. He does not, however, identify any of them as having been present in his apartment on August 6, 2001 and he does not lodge any specific factual charges against them. Therefore, I will analyze this claim as against only the five defendants named above.

Claims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard. <u>Brosseau v. Haugen</u>, 125 S.Ct. 596, 598, 160 L. Ed. 2d 583 (2004). Proper application requires careful attention to the facts and circumstances of each particular

case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 1699-1700, 85 L. Ed. 2d 1 (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"); see also Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989).

The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See Scott v. United States, 436 U.S. 128, 137-139, 98 S.Ct. 1717, 1723-1724, 56 L. Ed. 2d 168 (1978). In analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879 (1968) .

"Reasonableness of particular use of force must be judged from perspective of [a] reasonable officer on the scene, and the calculus of reasonableness must allow for [the] fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain and rapidly evolving, about amount of force that is necessary in a particular situation." Graham, 490 U.S. at 386 (internal quotes omitted). A police officer is entitled to use reasonable and necessary force to effect an arrest, and to use reasonable and necessary force to protect himself, his fellow officers and others when a person becomes violent in the course of an arrest. Id. at 396. For purposes of a claim for civil damages resulting from an officer's performance of discretionary functions, an officer's actions are objectively unreasonable when no officer of

reasonable competence could have made the same choice in similar circumstances. <u>Lennon v. Miller</u>, 66 F.3d 416, 420-21 (2d Cir. 1995).


1. *Officer Kornas and Officer Falcone*

Officer Kornas and Officer Falcone assert qualified immunity against plaintiff's claims that the officers used reasonable force in effecting plaintiff's arrest.

Even viewing the facts in a light most favorable to plaintiff, it is undisputed that he did not cooperate with Officers Kornas and Falcone when they sought to arrest him. Plaintiff states in his complaint that he demanded the officers leave his apartment, refused to extinguish his cigarette when ordered to do so by Officer Falcone, participated in an altercation with the officers, grabbed for their batons, and grabbed an officer in the groin. Plaintiff even admits that he disarmed one of the police officers by taking away his baton.

Given these admissions by plaintiff, I cannot say that the officers' actions were "objectively unreasonable" in light of the facts and circumstances confronting them. And, insofar as is relevant on their motion to dismiss on the ground of qualitative immunity, I certainly cannot conclude that no reasonable officer confronted with plaintiff's admitted behavior would have responded in the way that Falcone and Kornas did. The officers responded to a domestic violence complaint. Plaintiff refused to cooperate with them from the moment of their arrival. By grabbing for the officers' batons, plaintiff put the officers in a vulnerable situation. Kornas and Falcone needed to radio for backup because the situation became too much for them to handle alone. In the circumstances, reasonable police officers might well conclude that force as described in the Amended Complaint (which includes hitting the plaintiff

about the neck and shoulders and wrist with a nightstick and wrestling him to the ground) was necessary in order to effect the arrest and protect themselves.

Therefore, Officers Kornas and Falcone are entitled to immunity.

2. *Detective Lornegan*

Plaintiff alleges that Detective Lornegan arrived at the scene after receiving a call for backup from Officers Kornas and Falcone. Plaintiff states that he immediately complied with Lornegan's order to lie on his stomach and place his hands behind his back. (Am. Cplt. at 3.)[2] He alleges that, instead of handcuffing him, four unarmed officers stood on his extremities while Lornegan put his knee in his back, cuffed his left wrist and pulled his wrist to the back of his head. (Am. Cplt. at 3.) Plaintiff claims that Lornegan pulled hard on the handcuffs, causing it to cut through his flesh to the bone. Plaintiff alleges that while he was on the ground and after his left hand was cuffed (but not his right hand), Lornegan pulled his head up by the hair while another officer sprayed a can of mace directly into his face. (Id.) Plaintiff claims that he was then also kicked in the ribs before the handcuffs were placed on his other wrist. (Id.)

Determining whether the force used during plaintiff's arrest was "reasonable," for purposes of his § 1983 claim, requires balancing the nature and quality of the intrusion on plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake; this standard evaluates the reasonableness of the force used by the police considering the totality of circumstances faced by the officers on the scene. Lennon, *supra*, 66 F.3d at 425. In

---

[2] On a motion to dismiss on the pleadings, I must accept as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of plaintiff. Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001). Lornegan has submitted an affidavit in which he tells a different story. But Lornegan's version of the events is not relevant on a motion to dismiss on the ground of qualified immunity.

view of the relevant factors including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest," (Saucier, *supra*, 533 U.S. at 201), Lornegan's use of force was justified.

Although plaintiff alleges that he complied with the Detective Lornegan's orders to lie on his stomach and put his hands behind his back, no reasonable police officer could assume that plaintiff was not still a threat to further resist arrest and/or threaten the safety of the officers. See, e.g., Mills v. Fenger, 98 Civ. 0034, 2003 WL 251953, at *3 (W.D.N.Y. Jan. 3, 2003). Just moments before, plaintiff had wrestled the baton away from one officer and grabbed the groin of another. (Am. Cplt. at 2.)

In Mills v. Fenger, the officers arresting a suspect in a bank robbery found him sitting on a bed, and when the suspect stood up, the officers picked him up and slammed him to the ground. Id. The use of force was deemed reasonable and necessary because the officers had reason to believe that the suspect might pose a threat to them – either through the use of a weapon or physical force. Id. The court found that the officer's actions – throwing the suspect to the floor – was "necessary and commensurate with the need to quickly quell the threat posed by [the suspect]." Id.

In Sassower v. City of White Plains, 89 Civ. 1267, 1995 WL 222206 (S.D.N.Y. Apr. 13, 1995), the court found that where plaintiff had resisted arrest, plaintiff's allegations that the officers "pulled her hands behind her back and handcuffed her in an extremely painful manner, and then shoved and pushed her into a police car," constituted a relatively minimal level of force.

Detective Lornegan was at the scene in response to a call for backup after plaintiff aggressively resisted arrest. Lornegan entered a situation that was described by plaintiff as a

"melee" (Pl. Dep. at 75:22), and his purpose for being there was to aid the officers in subduing plaintiff and effecting his arrest.

According to plaintiff, at the time that the Lornegan pulled back on the handcuff on plaintiff's left wrist and then pulled plaintiff's head back so that officer Fagan could spray him with mace, plaintiff was not yet fully handcuffed. Plaintiff had already shown himself to be a possible threat to the officer's safety and he had resisted arrest. It was only after plaintiff was sprayed with mace that Officer Lornegan handcuffed his right wrist. (Cplt. at 3). Based on the situation and circumstances pleaded by plaintiff, the actions taken by Detective Lornegan were "objectively reasonable." Under these circumstances, I could not conclude that no reasonable officer confronted with plaintiff's admitted behavior would have taken the same steps to ensure that plaintiff was arrested without further incident.

The degree of force allegedly used by Lornegan was justified and he is therefore entitled to qualified immunity.

3. *Officer Fagan*

The only allegation pleaded against Officer Fagan in plaintiff's complaint and deposition is that he sprayed mace in plaintiff's face when other officers were effectuating the arrest. (Dep. at 75:22.) Under the excessive force standard, the question is whether Officer Fagan's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. See Scott, *supra*, 436 U.S. at 137-39.

Fagan arrived as a responding officer to Kornas and Falcone's call for backup resulting from a situation that the plaintiff referred to as a "melee." (Dep. 64:12-15.) According to the facts pleaded by plaintiff, plaintiff was "asked to lay on [his] stomach and place his hands behind

his back. [He] immediately complied but instead of handcuffing [plaintiff] . . . officers stood on his . . . ankles and shoulders . . . [and] Lonergan put his knee in the small of [plaintiff's] back, cuffed [his] left wrist then proceeded to pull his wrist to the back of [his] head . . . Lonergan pulled harder on the handcuff . . . [and] also grabbed [plaintiff's] hair with his other hand, wrenching [his] neck back while another officer, Brian Fagan, sprayed a full can of mace into [plaintiff's] face which was already bleeding. . . after a few indiscriminate kicks to his ribs [Lornegan] placed the cuff on [plaintiff's] other wrist." (Am. Cplt. at 3.)

Lornegan had only placed the handcuffs on plaintiff's left wrist when Fagan sprayed him with mace, thus plaintiff was not yet fully handcuffed. Considering the fact that plaintiff had already been physically aggressive with the police officers and resisted arrest, Fagan's use of mace to subdue and incapacitate plaintiff was justified.  It was an "objectionably reasonable" method of aiding Lornegan in effecting plaintiff's arrest without the threat of further physical aggression or resistance by plaintiff.  Mills, *supra*, 2003 WL 251953, at *3 n.13.  Thus, Officer Fagan is entitled to qualified immunity.

In addition, because plaintiff has not alleged any injuries from being spayed with mace – aside from the immediate discomfort – the allegation against Fagan is not actionable. See id.; see also Murphy v. Neuberger, 94 Civ. 7421, 1996 WL 442797, at *8 (S.D.N.Y. 1996) (granting motion to dismiss where plaintiff did not allege that he was injured as a result of defendant's allegedly excessive conduct).

For these reasons, the claims against Officer Fagan are dismissed.

4. *Officer Martinez*

Even though Martinez did not physically participate in plaintiff's arrest, he could nonetheless be liable under § 1983 if he failed to intervene in a situation where excessive force was being employed.  It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).   "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, see O'Neill, 839 F.2d at 11-12; (2) that a citizen has been unjustifiably arrested, see Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir. 1982); or (3) that any constitutional violation has been committed by a law enforcement official, see O'Neill, 839 F.2d at 11." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  Liability will attach if the officer had a realistic opportunity to intervene to prevent the harm from occurring.  See O'Neill, 839 F.2d at 11-12.

However, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 129 (2d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73, L. Ed. 2d. 396 (1982).

Plaintiff alleges that Martinez witnessed other officers (namely, Lornegan and Fagan) performing acts that violated the constitutional prohibition against the use of excessive force.

Plaintiff alleges in his complaint that he, ". . . called to Officer Martinez, who [he] knew from the library for some help." He states that Officer Martinez replied, "I can't help you, you've crossed the line." (Am. Cplt. at 3.)

An officer is entitled to qualified immunity unless his failure to intercede was under "circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." Id. (citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L. Ed. 2d 523 (1991)).

Because the other officers did not use excessive force (see *supra*), Officer Martinez had no duty to intercede. See, e.g., Santana v. City of Hartford, 283 F.Supp.2d 720, 728 (D.Conn. 2003). Moreover, even if the other officers' actions had amounted to the use of excessive force, it would have been reasonable for Officer Martinez to believe that their actions were in fact lawful – as a means of subduing plaintiff and effectuating his arrest – thus entitling him to qualified immunity. See Ricciuti, *supra*, 124 F.3d at 129.

For these reasons, the claim against Officer Martinez is dismissed.

5. *Officers Lynch, Lore, Conca, Al-Fattaah, Kamau, Navarette*

"Personal involvement" of a named defendant in a § 1983 action of alleged constitutional depravation is a prerequisite to an award of damages. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Under § 1983, only a defendant who personally subjects, or causes to be subjected, any person to the deprivation of any federal right will be held liable. 42 U.S.C. § 1983.

Plaintiff does not plead any facts tending to show personal responsibility of Officers Lynch, Lore, Conca, Al-Fattaah, Kamau or Navarette. Indeed, he does not even identify who

they are. All he has done is add them to the caption of his pleading. He asserts no factual allegations against them.

Plaintiff already had one opportunity – provided by Chief Judge Mukasey – to amend his complaint in order to allege facts tending to show personal involvement by the various officers. This court even allowed him to file that amended pleading out of time. The amended pleading fails to cure this defect. This action is dismissed against Officers Lynch, Lore, Conca, Al-Fattaah, Kamau, Navarette because plaintiff has not alleged anything against them.

**B. September 28, 2002 Arrest**

An officer is entitled to qualified immunity from suit for damages on a claim for arrest if either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied sub nom.*, Lillis v. Golino, 505 U.S. 1221, 112 S.Ct. 3032, 120 L. Ed. 2d 902 (1992). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (citation and internal quotation marks omitted).

1. *Officer Moretti*

The complaint does not specifically allege what Officer Moretti's role was in this matter. Officer Moretti was the seventh officer added as a defendant to the caption of the amended complaint, but without any indication in the amended complaint that she was even present in his

apartment on August 6, 2001 or any specific factual charges against her. Therefore, I could simply rule that the amended complaint does not state any claim against her.

However, in support of her motion for judgment on the pleadings, Officer Moretti submitted an affidavit that supplies much, if not all, of the information that is missing from the complaint. Officer Moretti was the arresting officer on September 28, 2002. Officer Moretti contends that she is entitled to qualified immunity in connection with that arrest.

Officer Moretti's motion is accompanied by an affidavit, in which she indicates that she arrested plaintiff based on a sworn statement by Annette DeQuatro. In that statement, DeQuatro allegedly claimed that plaintiff had been harassing her with emails and phone calls, all in violation of an order of protection issued August 7, 2001 (right after the August 6 arrest). If that is true, then Officer Moretti is entitled, not to qualified immunity, but rather to summary judgment dismissing the complaint, because she had probable cause to effect the arrest and there was no constitutional violation.

Plaintiff argues that the evidence initially submitted by Officer Moretti in support of her motion does not establish anything about probable cause, because Ms. DeQuatro did not swear out her statement until one half hour after he was arrested. Moretti concedes that this is correct (which of course makes her original argument wrong as a matter of fact). However, in reply, Officer Moretti submits additional evidence concerning the information that was in her possession at the time of the arrest. She avers that she had already spoken to DeQuatro before the arrest, and that she had seen the e-mails that on their face appeared to be sent by the plaintiff.

Unfortunately, I cannot resolve this issue on a motion for judgment on the pleadings, because I cannot consider this extraneous matter in connection with the motion. However, I can

and do convert this motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 56, because it appears that Officer Moretti may well be entitled to dismissal of this case for want of any constitutional violation.

When a court converts a motion to dismiss (or for judgment on the pleadings) to a motion for summary judgment, the party opposing the motion must be advised of his duty to controvert the motion with admissible evidence that defeats the motion by raising a genuine issue of material fact. Calcutti v. SBU, Inc., 273 F. Supp.2d 488 (S.D.N.Y. 2003); Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002). I so advise the plaintiff, and give him 45 days to submit admissible evidence (not conjecture or surmise or conclusory allegations on his part) sufficient to raise a genuine issue of material fact on the issue of probable cause. In conjunction therewith, I note the following:

(1) Probable cause need not be predicated on a sworn statement. An officer has probable cause to arrest when she has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993); Weyant v. Okst, 101 F.3d 845, 851 (2d Cir. 1996). A complaint from a civilian witness is sufficient. Here, Moretti's affidavit establishes that, prior to her arrest of plaintiff, DeQuatro showed her the emails allegedly sent from plaintiff and explained that she felt that her family was being threatened. Officer Moretti also avers to her knowledge of the existence of two orders of protection against plaintiff, alleged phone and email correspondence, and a previous assault conviction. All this information is relevant to an assessment of probable cause.

(2) Plaintiff, quoting the text of the e-mails he sent, argues that they were far from

threatening. He also argues that there was no proof that the e-mails were actually sent by him, contending (albeit without evidentiary support) that an "email header can be altered by a motivated individual." (See Pl. Response). While these arguments might be relevant at a trial on the merits of the criminal contempt charge, none of this would affect the reasonableness of the Officer's conclusion that he had probable cause to arrest plaintiff. The e-mail header on the e-mails shown by DeQuatro to Moretti identified plaintiff as the sender. Moretti was not required to eliminate any probability that the header was wrong, or to investigate whether the email header had been "altered by a motivated individual," before arresting plaintiff. See Pl. Response, dated Feb. 11, 2005.

Frankly, I am hard-pressed to see what evidence plaintiff could submit that would raise a genuine issue of fact. However, I am required by law to give him that opportunity.

## II. The Claims Against Dominic Procopio And Mayor Timothy Idoni Are Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.

"In order to state a cognizable claim under Section 1983, [plaintiff] must allege conduct under color of state law that deprived him of rights secured by the Constitution or laws of the United States." Katz v. Klehammer, 902 F.2d 204, 206; see also Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L. Ed. 2d 420 (1981). Plaintiff's complaint alleges that named defendants conspired to violate his civil rights. "Personal involvement" of a named defendant in a § 1983 action of alleged constitutional depravation is a prerequisite to an award of damages. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Under § 1983 only a defendant who personally subjects, or causes to be subjected, any person to the deprivation of any federal right will be held liable. 42 U.S.C. § 1983. A showing of some personal responsibility is necessary. Id.

The four ways in which a defendant may be found to have been "personally involved" in a constitutional deprivation under § 1983 include: (1) direct participation in the infraction; (2) failure to remedy a wrong after learning of the violation; (3) creating or allowing a policy to continue under which the violation occurred; or (4) having been grossly negligent in managing the subordinates who caused the unlawful condition or event. Williams v. Smith, 781 F.2d 319 (2d Cir. 1986). The allegation that a named defendant merely had the right to control, without any allegation that defendant exerted such control is not sufficient to support a § 1983 action. Anderson v. Sullivan, 702 F. Supp. 424 (S.D.N.Y. 1988).

### A. Conspiracy to Violate Plaintiff's Rights

The plaintiff's amended complaint alleges a conspiracy by the City of New Rochelle and the New Rochelle Police Department. The plaintiff asserts the two groups are "seeking to destroy [him] economically." (Am. Cplt. at 4.) He states that there is an unstated policy in the City of New Rochelle that "anyone that attack[s] a police officer 'crosses the line' and is unfit to live in the City and every means necessary may be employed to accomplish said individual's removal from the City." (Am. Cplt. at 4.) In addition, plaintiff alleges a policy by the two groups that "allow[s] or encourage[s] police officers to physically, mentally and legally abuse men of color that date European (white) women." (Am. Cplt. at 3.) Plaintiff also alleges, in conclusory fashion, that Dominic Procopio, the Chairman of the New Rochelle Civil Service Commission and Timothy Idoni, the Mayor of the City of New Rochelle, conspired with defendant Patricia Anderson, an employee of the New Rochelle Public Library,[3] to effect the wrongful termination of his employment as a clerk at the New Rochelle Public Library.

---

[3] Plaintiff's § 1983 claim against Patricia Anderson was dismissed in a March 9, 2005 decision of this Court for failure to challenge his employment termination under CPLR Article 78.

1. *Dominic Procopio*

The plaintiff alleges, in conclusory fashion, that Procopio (acting with Patricia Anderson) caused his job as a clerk at the New Rochelle Public Library to be taken from him "without a hearing and without cause." (Am. Cplt. at 4.)  Complaints containing only conclusory, vague or general allegation of a conspiracy to deprive a person of constitutional rights will be dismissed. Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).  "Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  Id.

Plaintiff does not plead any facts tending to show that Procopio was "personally involved" in any conspiracy to violate his rights.  It appears that plaintiff named Procopio solely based on his position as head of the Civil Service Commission.  Plaintiff's claim rests on his assertion that Procopio violated his due process rights by failing to schedule a hearing regarding his discharge from employment. (Am. Cplt. at 4.)

The State of New York provides a dismissed municipal employee the opportunity to challenge his termination as arbitrary and capricious pursuant to CPLR Article 78.  The availability of Article 78 proceedings under New York law bars a municipal employee from maintaining § 1983 procedural due process claim.  Ryan v. Carroll, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999).  See also 42 U.S.C. § 1983; N.Y. McKinney's CPLR Art. 7801.  The availability of adequate post-deprivation procedure pursuant to Article 78 means that there has been no constitutional violation.  Ryan, 67 F. Supp. 2d at 360; see also Parratt v. Taylor, 451 U.S. 527; HANAC v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996).

The plaintiff has not alleged that he timely pursued a remedy pursuant to Article 78 against Procopio for the loss of his job at the library.  Nor could he timely allege his Article 78

claim now, since more than four months passed between the date of the adverse employment action and the filing of this action. The failure to pursue an available Article 78 proceeding under New York law bars the plaintiff, a municipal employee, from succeeding on his § 1983 due process claim. Ryan, 67 F. Supp. 2d at 361.

Thus, Procopio's motion for judgment on the pleadings is granted and the claim against him is dismissed with prejudice.

2. *Mayor Idoni*

Plaintiff alleges, in conclusory fashion, that Mayor Idoni was also part of the alleged conspiracy based on an alleged communication he had with an unnamed former coworker of plaintiff's. Plaintiff asserts that he was "told by one of [his] former coworkers that the Mayor (Idoni) himself had lobbied Ms. Anderson and the Library Board to prevent [his] return despite the fact that [he] was very well received by the patrons." (Am. Cplt. ¶ 6.) This is the only reference plaintiff makes to Mayor Idoni in his complaint.

As noted above, complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed. Ostrer, 567 F.2d at 553 ("Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.").

Plaintiff has already had one opportunity – provided by Chief Judge Mukasey – to amend his complaint. Plaintiff's amended complaint however, fails to state a claim upon which relief can be granted as against Mayor Idoni. The unattributed statement quoted above – assuming it to be true – does not allege that plaintiff's civil rights were violated. There is no allegation in the complaint that Mayor Idoni acted out of racial animus toward plaintiff and there

is no allegation of any fact tending to show that Mayor Idoni harbored any racial animus against plaintiff. His claim against Mayor Idoni is dismissed with prejudice.


### III.    The Claim Against The City Of New Rochelle Is Dismissed For Failure To State A Cause Of Action

To maintain a Section 1983 action against a municipal defendant, the plaintiff must allege the existence of a municipal policy, and that his injuries are caused by that policy.  Monell v. Dept. of Soc. Services of the City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978).  A plaintiff may assert the existence of a municipal policy in one of four ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates.  Id.

Plaintiff's amended complaint alleges a conspiracy by the City of New Rochelle and New Rochelle Police Department.  Plaintiff asserts that the two groups are "seeking to destroy [him] economically." (Am. Cplt. at 4.)  He states that there is an "unstated policy of the City of New Rochelle, anyone that attacks a police officer 'crosses the line' and is unfit to live in the City and every means necessary may be employed to accomplish said individual's removal from the City." (Am. Cplt. at 4.)  In addition, the plaintiff alleges a policy by the two groups that "allow[s] or encourage[s] police officers to physically, mentally and legally abuse men of color that date European (white) women." (Am. Cplt. at 4.)

23

The § 1983 claims here alleged against the remaining individual defendants are false arrest (which may yet be dismissed on motion) and use of excessive force. A municipality may not be held liable in a § 1983 action for the conduct of an employee solely on the basis of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79, 106 S.Ct. 1292, 1297-98, 89 L. Ed. 2d 452 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L. Ed. 2d 791 (1985); Monell v. Department of Social Services, 436 U.S. at 690, 694, 98 S.Ct. at 2035, 2037; Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986); Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir.1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369, 94 L. Ed. 2d 685 (1987). Although the plaintiff need not show that the municipality had an explicitly stated rule or regulation (see Villante v. Department of Corrections, 786 F.2d 516, 519 (2d Cir.1986)), a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy (see, e.g., City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989)).

A Monell claim against a municipality requires, as a predicate, an allegation of a constitutional violation against some individual actor. Monell v. Dep't of Soc. Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978). Plaintiff's claim predicated on some "unstated policy" of causing economic duress to individuals who "cross the line" with police is predicated on the loss of his job at the library. Since he has not sufficiently

alleged any constitutional violation based on the loss of his job, his <u>Monell</u> claim, based on some "unstated" economic duress policy of the City of New Rochelle, must also be dismissed.  His claim based on a policy of abusing men who engage in interracial dating is at least arguably connected to his claim for use of excessive force, and since that claim survives (for the moment) against three of the Officer Defendants, I must analyze whether plaintiff has pleaded a <u>Monell</u> claim on this ground.

It is clear from the complaint that plaintiff is not relying on any formally adopted policy of the City or the Department. He is talking about an "unstated" policy. Moreover, he does not allege any facts tending to show that this "unstated" policy relating to the abuse of black men who date white women resulted from the acts of any official policy-maker under State law. He does not even identify who the official policy-maker might be (his lone allegation against Mayor Idoni has to do with the loss of his job, not with the use of excessive force).

Viewing the allegations of the complaint most favorably to the plaintiff, it appears that he is trying to plead the existence of a widespread practice of abusing men of color who date white women. However, he does so only in conclusory fashion, without any supporting factual allegations except those relating to his own situation. If indeed this is the sort of "policy" on which plaintiff relies, his complaint cannot survive New Rochelle's motion to dismiss, because one man's experience does not make a policy.  A single incident alleged in a complaint, especially if it involved only actors below the policy-making level, generally does not suffice to show a municipal policy or custom. <u>Ricciuti v. N.Y.C. Transit Auth.,</u> 941 F.2d 119, 123 (2d Cir. 1991).

Last, although the plaintiff does not specifically plead the defendant's failure to train,

here too, the fact that the complaint contains allegations only about plaintiff's experience is fatal to his claim. An allegation that a municipality was "deliberately indifferent" to the need to train, monitor, or supervise its employees, without alleging any facts beyond the specific instance giving rise to his complaint, generally fails to adequately to plead a custom or policy on the part of the municipality. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); Sarus v. Rotundo, 831 F.2d 397, 402 (2d Cir. 1987).

In the case at bar, plaintiff has identified two incidents that he alleges rise to a constitutional deprivation: the use of force in connection with his first arrest, and the fact that he was arrested without probable cause on the second occasion. Plaintiff does not plead any facts relying on his own experience or that of others that suggests that either the alleged use of excessive force or his September 2002 arrest were the result of a failure to properly train. Therefore, his allegations are insufficient to establish a policy, custom or practice on the part of the City of New Rochelle or the New Rochelle Police Department under Monell.

The City of New Rochelle's motion to dismiss is granted.

## IV. Plaintiff's State Law Claims Are Dismissed For Failure To Comply With General Municipal Law § 50-e

Plaintiff's state law tort claims are governed by New York General Municipal Law § 50-i(1), which provides, in relevant part:

> No action . . . shall be prosecuted or maintained against a city, county, town, village . . . for personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village . . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village . . . in compliance with section fifty-e of this chapter, . . . and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

The provisions of N.Y. Gen. Mun. Law § 50-i apply not only to claims against municipalities, but also to suits against "officer[s], agent[s] or employee[s]" whose conduct caused the alleged injury. Gonzalez v. City of New York, 94 Civ. 7377, 1996 WL 227824, at *2 (S.D.N.Y. May 3, 1996), De Gradi v. Coney Island Medical Group, P.C., 172 A.D.2d 582, 583, 568 N.Y.S.2d 412, 413 (2d Dep't 1991).

N.Y. Gen Mun. Law 50-e, referenced in N.Y. Gen Mun. Law 50(1)(c), requires that a plaintiff must file a notice of claim prior to commencement of an action against a municipality, and must serve the notice of claim within 90 days after the claim arises. The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action. Fincher v. The County of Westchester, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). A plaintiff's failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims. Hyde v. Arresting Officer Caputo, 98 Civ. 6722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001). Defendants contend that plaintiff never filed a notice of claim in compliance with N.Y. Gen. Mun. Law § 50-e, as required by N.Y. Gen. Mun. Law § 50-i(1)(c). Plaintiff does not dispute this assertion. Therefore, plaintiff's state law claims are dismissed.

## V.    Conclusion

Defendants' motion for judgment on the pleadings is granted with prejudice as to the claims against Officer Defendants' Kornas, Falcone, Lornegan, Fagan, and Martinez, and City Defendants' Procopio, Idoni and the City of New Rochelle. The claims against Officer Defendants' Lynch, Lore, Concoa, Al-Fattah, Kamau, and Navarette are dismissed without prejudice. Officer Moretti's motion for judgment on the pleadings is converted to a motion for

This constitutes the decision and order of the Court.

Dated: June 9, 2005

_____
U.S.D.J.